# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Anchor Blue Holding Corp., et al.,[1] | Case No. 11-10110 (PJW) |
| Debtors. | Joint Administration Requested |
| | Ref. Docket Nos. 15 and 44 |

## ORDER AUTHORIZING AND APPROVING DEBTORS' (I) ASSUMPTION OF AGENCY AGREEMENT, (II) CONTINUED STORE CLOSING SALES, (III) GRANTING OF LIEN TO AGENT, (IV) PAYMENT OF BREAK-UP FEE, (V) ABANDONMENT OF PROPERTY, AND (VI) OTHER RELATED RELIEF

Upon the motion (the "Motion") of the debtors and debtors-in-possession (each a "Debtor" and collectively, the "Debtors") in the above captioned cases, pursuant to Sections 105(a), 363, 364, 365, and 554 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and Rules 6004, 6006, and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing and approving (i) the assumption of the Agency Agreement (the "Agency Agreement")[2] dated January 5, 2011 between the Debtors and a joint venture of Gordon Brothers Retail Partners, LLC and Hilco Merchant Resources, LLC as liquidating agent ("GB/Hilco" or the "Agent"), (ii) continued store closing sales (the "Store Closing Sales") at all of the Debtors' retail locations (the "Closing Stores") in accordance with the terms of the Agency Agreement and the Store Closing Guidelines, with such sales to be free and clear of all Liens; (iii) the Debtors' grant of a first priority secured lien to the Agent in connection with the Store Closing Sales, (iv) payment of the proceeds of the Store Closing Sales

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Anchor Blue Holding Corp. (1314) and Anchor Blue, Inc. (9916). The mailing address for both of the Debtors is 1260 Corona Pointe Ct Corona, CA 92879.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or the Agency Agreement, as applicable.

to the Debtors' Prepetition Lenders; and (v) other related relief as may be appropriate; and upon the *Declaration of Thomas A. Shaw in Support of First Day Motions* (the "First Day Declaration"); and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Debtors having provided due and sufficient notice of the Motion under the circumstances and no other or further notice need be given; and a hearing having been held on January 12, 2011 (the "Interim Hearing") with respect to the Motion; and upon the statements at the Interim Hearing and the entire record of these cases; and it appearing that the relief requested by the Motion is in the best interests of the Debtors' estate and its creditors and stakeholders; and after due deliberation and sufficient cause appearing therefor, it is hereby

FOUND AND DETERMINED THAT:

A. On January 5, 2011, the Debtors and the Agent entered into the Agency Agreement and thereafter commenced the Store Closing Sales. A copy of the Agency Agreement is attached hereto as Exhibit 1. To secure their obligations under the Agency Agreement, the Debtors granted to the Agent a valid and perfected first priority lien upon the Debtors' Merchandise, the Owned FF&E and all proceeds from the sale of the Owned FF&E, and the Agent's commission regarding the sale or other disposition of Merchant Consignment Goods, and the Proceeds, subject to the terms and conditions set forth in the Agency Agreement.

B. The Agency Agreement was negotiated and entered into in good faith, based on arms' length negotiations, and without collusion or fraud. The Agent is acting in good faith and is entitled to the protections of sections 363(m) and (n) and 364(e) of the Bankruptcy Code with

2

YCST01:10575787.5                                                                                                        070040.1001

respect to the Assets subject to the Store Closing Sales and the security interest granted to the Agent pursuant to the Agency Agreement and this Order.

C. Time is of the essence in assuming the Agency Agreement and continuing the Store Closing Sales without delay. The Debtors will suffer irreparable harm if the Agency Agreement is not immediately assumed and the Closing Store Sales are not allowed to proceed uninterrupted in accordance with the terms herein and the Store Closing Guidelines.

D. The Debtors' decision to (i) assume the Agency Agreement (and comply with the terms thereunder including the making of any required payments), and (ii) continue the Store Closing Sales, is a reasonable exercise of the Debtors' sound business judgment, and is in the best interest of the Debtors, the estate, its creditors and other stakeholders. The Debtors have demonstrated sufficient business purposes and justification for the relief granted herein. Therefore, it is hereby:

ORDERED, ADJUDGED, AND DECREED THAT:

1. The Motion is granted as set forth herein, and any objections not previously resolved or withdrawn or expressly addressed herein are hereby overruled on the merits.

2. Subject to any contrary provisions in the Order, the Agency Agreement is approved in its entirety. To the extent there are any conflicts between this Order and the Agency Agreement, this Order controls. Pursuant to section 365 of the Bankruptcy Code, the Debtors' assumption of the Agency Agreement is hereby authorized as a valid exercise of the Debtors' sound business judgment. The Debtors and the Agent are further authorized to continue performance and make all payments as required by the Agency Agreement as and when due thereunder without further order of this Court. The Debtors are hereby authorized and directed to apply all payments made to the Debtors under the Agency Agreement, including the

Guaranteed Payment and the Guaranteed Amount Deposit, as follows: (a) first, to PNC until all outstanding obligations under the Revolving Credit Facility have been satisfied (including the cash collateralization of all outstanding letters of credit under the Revolving Credit Facility); and second, to the Term Loan Agent to be held as Cash Collateral and disbursed and/or applied pursuant to the terms of the Proposed Cash Collateral Order. PNC and the Term Loan Agent are hereby authorized to apply amounts paid toward the satisfaction of their prepetition claims to the extent consistent with the Agency Agreement and the terms of the Proposed Cash Collateral Order.

3. Subject to the provisions of this Order, and pursuant to sections 105(a) and 363 of the Bankruptcy Code, the Debtors and/or the Agent (and each of their respective officers, employees, and agents) are authorized to continue with the Store Closing Sales, and any actions by the Debtors and the Agent in contemplation of the Store Closing Sales and pursuant to the Agency Agreement are hereby approved.

4. The Agent shall have the right to continue to use the Closing Stores and all store-related services, furniture, fixtures, equipment and other assets of the Debtors as designated hereunder for the purpose of conducting the Store Closing Sales, free of any interference from any entity or person, subject to compliance with the Store Closing Guidelines and this Order with respect to the Merchandise and Owned FF&E.

5. The Agent shall be granted a limited license and right to use, until the Sale Termination Date, the trade names, logos, and customer lists relating to and used in connection with the operation of the Closing Stores, solely for the purpose of advertising the Store Closing Sales in accordance with the terms of the Agency Agreement.

6. Subject to the provisions of this Order, the Store Closing Guidelines attached hereto as <u>Exhibit 2</u> are hereby approved. To the extent there are any conflicts between the Store Closing Guidelines and the Agency Agreement, the Store Closing Guidelines shall control.

7. The Agent and landlords of the Closing Stores are authorized to enter into agreements between themselves modifying the Store Closing Guidelines without further order of the Court, <u>provided</u>, that such agreements (i) do not have a material adverse effect on the Debtors or their estates, (ii) do not result in a reduction of the amounts due to the Debtors under the Agency Agreement, and (iii) do not modify the provisions of paragraphs 12 and 13 of this Order.

8. All newspapers and other advertising media in which the Store Closing Sales may be advertised, and all landlords of the Debtors are directed to accept this Order as binding authority allowing the Debtors and/or the Agent to conduct the Store Closing Sales at the Closing Stores, including, without limitation, advertising and promoting of the Store Closing Sales, in accordance with the Agency Agreement, the Store Closing Guidelines, and this Order.

9. The Agent is authorized to conduct, advertise, post signs and otherwise promote the Store Closing Sales as a "going-out-of-business," "store closing," "sale on everything," "everything must go," or similar themed sale, subject to compliance with the Store Closing Guidelines and this Order, including, specifically, paragraphs 12 and 13 herein.

10. All landlords, sublessors, subtenants, utility companies, creditors, or other persons or entities (and all those acting for or on their behalf), but excluding Governmental Units, as defined in Section 101(27) of the Bankruptcy Code, shall not (i) prohibit the Debtors and/or Agent from advertising and promoting the Store Closing Sales, (ii) interfere with or otherwise hinder the conduct of the Store Closing Sales, or the use or maintenance of the Debtors' assets located at the Closing Stores, or (iii) initiate any action or proceeding in any court, agency, or

administrative body for the purpose of obtaining an order or judgment against the Debtors, Agent, or a landlord that might in any way (directly or indirectly) obstruct or interfere with, or adversely affect the conduct of the Store Closing Sales, and/or seek to recover damages for any breach of any covenants or provisions in any lease or sublease.

11. The Store Closing Sales shall be conducted by the Debtors and/or Agent notwithstanding any restrictive provisions of any lease, sublease, or other agreement affecting or purporting to restrict the conduct of the Store Closing Sales, the rejection of leases, abandonment of property, or "going dark" provisions; *provided*, that nothing in this Order shall affect the rights of any landlord or third-party with respect to assumption, assignment, or rejection of its respective lease or other agreement, or to any proposed cure amount or rejection damages claim in connection with the assumption, assignment or rejection of such lease or other agreement.

12. The Store Closing Sales shall not be exempt from, and the Agent shall be required to comply with, laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws"). Nothing in this Order shall be deemed to bar any Governmental Unit from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' or the Agent's right to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Order, or otherwise, pursuant to paragraph 13 hereunder. Notwithstanding any other provision in this Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Order and/or any

applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Order shall be deemed to have made any rulings on any such issues.

13. To the extent that the Store Closing Sales are subject to any federal, state or local statute, ordinance, or rule, or licensing requirement solely directed at regulating store closing, "going-out-of-business," liquidation, auction or similar themed sales (collectively, "GOB Sales"), including laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers solely in connection with GOB Sales and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions that would otherwise apply solely to GOB Sales (collectively, "Liquidation Laws"), the following provisions shall apply:

a. Provided that the Store Closing Sales are conducted in accordance with the terms of this Order, the Agency Agreement, and the Store Closing Guidelines, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered sales from their provisions, the Debtors shall be presumed to be in compliance with any Liquidation Laws and, subject to paragraphs 12 and 13 herein, are authorized to conduct the Store Closing Sales and Bulk Inventory Sales in accordance with the terms of this Order and the Store Closing Guidelines without the necessity of compliance with any such Liquidation Laws.

b. Within five (5) business days following the entry of this Order, the Debtors shall serve copies of this Order, the Agency Agreement, and the Store Closing Guidelines via email, facsimile, or U.S. postal mail, for each state in which the Store Closing Sales are being held, on: (i) the Attorney General's office, (ii) the county

consumer protection agency, or similar body, and (iii) the chief legal counsel for the local jurisdiction.

    c. If there is a dispute as to whether the general conduct of the Store Closing Sales in accordance with this Order, the Agency Agreement, and the Store Closing Guidelines would violate a Liquidation Law, and should, therefore, be limited or barred (a "Reserved Dispute"), resolution of that Reserved Dispute will take place before this Court, as provided in this paragraph. Any time before the tenth (10) day following the aforementioned service, any Governmental Unit may assert a Reserved Dispute by serving a notice explaining the nature of the dispute upon counsel for the Debtors and counsel for the Agent at the addresses set forth in the Agency Agreement, so as to be received within one (1) business day thereafter. If the Debtors, Agent and Governmental Unit are unable to consensually resolve the Reserved Dispute within ten (10) days of receipt of the notice, any party may file a motion with this Court seeking resolution of the dispute (a "Dispute Resolution Motion"). Any such Dispute Resolution Motion shall also be served upon any affected landlord(s). Any issues relating to a Reserved Dispute shall not affect the finality of this Order, nor limit the Debtors and/or Agent's ability to conduct or continue with the Store Closing Sales in accordance with the Agency Agreement, the Store Closing Guidelines and this Order prior to any ruling by this Court on said Reserved Dispute.

    d. If a Dispute Resolution is timely filed, the Debtors and/or the Agent shall be entitled to assert that the provisions of this Order and/or the conduct of the Store Closing Sales do not violate the Liquidation Law, or that if they do, that such Liquidation Law is subject to preemption by the Bankruptcy Code. The Governmental Unit shall be

entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Laws or the lack of any preemption of such Liquidation Laws by the Bankruptcy Code. Nothing in this Order shall constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

   e.   If, at any time, a dispute arises between the Debtors and/or the Agent and a Governmental Unit as to whether a particular law is a Liquidation Law, and subject to any provisions continued in this Order related to Liquidation Laws, then any party to that dispute may utilize the provisions of subparagraphs (c) and (d) hereunder by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs. Any determination with respect to whether a particular law is a Liquidation Law shall be made de novo.

   f.   Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the Store Closing Sales, to the extent that disputes arise during the course of the Store Closing Sales regarding laws regulating the use of sign-walkers and banner advertising and the Debtors and the Agent are unable to resolve the matter consensually with the Governmental Unit, any party may request an immediate telephonic hearing with this Court pursuant to these provisions. Such hearing will, to the extent practicable, be scheduled initially within two (2) business days of such request. This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

   14.   Pursuant to section 363(f) of the Bankruptcy Code, all inventory Merchandise and Owned FF&E sold pursuant through the Store Closing Sales shall be sold free and clear of any and all interests, including, without limitation, mortgages, security interests, liens, judgments,

encumbrances, and "claims" (as such term is defined in section 101(5) of the Bankruptcy Code) (collectively, "Liens"), with such Liens, including the Liens of the Prepetition Lenders in accordance with the terms of the Proposed Cash Collateral Order, attaching solely to the Guaranteed Amount.

15. To the extent that any property of the Debtors, including any computers (hardware and/or software), cash registers, and/or similar equipment, contains or included personal or confidential customer or employee information, the Debtors shall remove or cause to be removed such personal and confidential information, in accordance with federal and state requirements relating to the handling of private personal information, before any sale or disposition of the property, including any abandonment of such property, occurs.

16. All landlords and any official committee seeking to object to the relief requested in this Motion on the basis of adequate protection, approval of the Store Closing Guidelines (except to the extent that a landlord has otherwise reached an agreement with the Debtors pursuant to paragraph 7, above) must file and serve such objection upon counsel for the Debtors and the Agent so as to be actually received on or before January 20, 2011 at 4:00 p.m. (EST) (the "Objection Deadline"). Any parties with questions relating to the relief granted hereby may contact Debtors' proposed undersigned counsel, Young Conaway Stargatt & Taylor, LLP (Attn: Kenneth J. Enos, Esquire), 1000 West Street, 17th Floor, Wilmington, Delaware 19801, or by telephone at 302-571-6600.

17. Until at least January 21, 2011, the Debtors and Agent will continue to honor gift cards and product returns that relate to goods purchased prior to January 7, 2011, and will publicize that amended proposed termination date by all means being used to provide notice of the current January 17, 2011 date. Any party wishing to object to those termination dates may be

10

YCST01:10575787.5    070040.1001

heard at the hearing on January 21, 2011 at 11:00 a.m. (EST), and shall notify both Debtors' proposed counsel and counsel to the Agent of their objection prior to that date.

18. If an objection is not filed and received on or before the Objection Deadline, those provisions of this Order shall automatically become final and non-appealable.

19. If one or more objections are timely filed and received, then there shall be a hearing on such objections before this Court on January 21, 2011 at 11:00 a.m. (EST).

20. The Debtors and the Agent are authorized to transfer the Assets among the Closing Stores.

21. The Agent shall be authorized to include Additional Goods in the Store Closing Sales in accordance with the terms of the Agency Agreement, provided, however, that such Additional Goods shall be sourced from the Debtors' prior vendors and shall be of a like kind and quality of that previously purchased from those vendors. The Agent's authorization shall be subject to the provisions of paragraphs 12 and 13 herein.

22. The Agent shall be granted a valid, binding, enforceable and perfected security interest in accordance with the terms of the Agency Agreement, without the necessity of filing any financing statements to perfect such security interests.

23. Any amounts owed by the Debtors to the Agent under the Agency Agreement shall be granted the status of superpriority claims in these bankruptcy cases pursuant to section 364(c) of the Bankruptcy Code.

24. To the extent the Agent is entitled to be reimbursed for any over-funded amounts (an "Overpayment") on account of the Guaranteed Amount, and the Lender's Agent and/or the Term Loan Agent received the Overpayment, then, upon the written request of the Agent, each

YCST01:10575787.5　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　070040.1001

of the Lenders' Agent and the Term Loan Agent shall disgorge such Overpayment in accordance with the terms of the Agency Agreement.

25. The Agent shall not be liable for any claims against the Debtors other than as expressly provided for in the Agency Agreement.

26. Except as expressly provided for in the Agency Agreement, nothing in this Order or the Agency Agreement shall constitute an assumption by the Agent of any of the Debtors' obligations relating to any of the Debtors' employees, nor shall the Agent be liable under any collective bargaining or employment agreement, or be deemed a joint or successor employer with respect to such employees.

27. Pursuant to section 554(a) of the Bankruptcy Code, the Debtors and the Agent are authorized to abandon any remaining FF&E or other property located at the Closing Stores at the conclusion of the Store Closing Sales without incurring liability to any person or entity. Further, the landlords of each Closing Store with any abandoned FF&E or other property are authorized to dispose of such abandoned property without liability to any third parties.

28. All of the transactions contemplated by the Agency Agreement shall be entitled to the protections under section 363(m) of the Bankruptcy Code in the event that this Order is reversed or modified on appeal.

29. Nothing contained in this Order or the Agency Agreement shall alter the Debtors' obligations to timely perform all obligations under the Leases pursuant to section 365(d)(3) of the Bankruptcy Code.

30. The Sale Termination Date shall not be extended beyond March 15, 2011 without further order of this Court.

31. This Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, except to the extent provided above with respect to further objections. This Order shall not be subject to reconsideration pursuant to Rule 9013-1(v) of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware. The 14-day stay (to the extent) applicable under Bankruptcy Rules 6004 and 6006 is hereby waived. In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Agent are authorized to take all actions necessary to implement and perform under the Agency Agreement.

32. At a hearing to be held on February 4, 2011 at 9:30 a.m. (EST), the Court shall consider the Debtors' proposed payment to the Horse Agent of the Break-up Fee, in the amount of $165,490, from the Guaranteed Amount Deposit. Objections to such relief must be filed so as to be received by proposed counsel to the Debtors and counsel to the Agent on or before January 28, 2011 at 4:00 p.m. (EST).

33. This Court shall retain exclusive jurisdiction over any disputes arising from or relating to the interpretation or implementation of this Order.

Dated: January 13, 2011
Wilmington, Delaware

_____
Peter J. Walsh
United States Bankruptcy Judge

YCST01:10575787.5                    070040.1001