# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Anchor Blue Holding Corp., et al.,[1] | Case No. 11-10110 (PJW) |
| Debtors. | Jointly Administered |
| | Ref. Docket Nos. 189 & 207 |

## ORDER, PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE, (I) AUTHORIZING THE SALE OF CERTAIN INTELLECTUAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, AND (II) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion") the above-captioned debtors and debtors and possession for entry of an order, pursuant to pursuant to 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing the sale of the Intellectual Property[2] on an "as is, where is" basis, free and clear of all liens, claims, encumbrances and interests to Perry Ellis International, Inc., or its assignee or designee, (the "Purchaser") as more fully set forth in the Asset Purchase Agreement, dated March 1, 2011, annexed hereto as Exhibit I (the "Purchase Agreement"), and (ii) granting related relief; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors and other parties-in-interest; and due and adequate notice of the Motion having been given under the circumstances; and a hearing having been held on the Motion on March 7, 2011; and upon the entire record in these Chapter 11

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Anchor Blue Holding Corp, (1314) and Anchor Blue, Inc. (9916). The mailing address for both of the Debtors is 1260 Corona Pointe Ct., Corona, CA 92879.

[2] Capitalized terms not defined herein shall have the meanings provided to them first in the Motion or the Purchase Agreement, as applicable.

Cases; and after due deliberation thereon, and good and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**

A. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

C. The statutory predicates for the relief sought in the Motion are sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 9014.

D. Due and adequate notice of the Motion, the proposed Sale, the Sale Hearing, and the subject matter thereof has been provided to all parties-in-interest herein, and no other or further notice is necessary. A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities.

E. The relief requested in the Motion is in the best interests of the Debtors, their estates, creditors and other parties-in-interest. The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the relief requested in the Motion.

F. The Sale was negotiated and proposed in good faith, from arms-length bargaining positions, and without collusion. The Purchaser is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and is entitled to the protection thereof. Neither the Debtors nor the Purchaser has engaged in any conduct that would cause or permit the

sale of the Acquired Assets (as defined in the Purchase Agreement) to the Purchaser pursuant thereto and hereto, to be avoided under section 363(n) of the Bankruptcy Code.

G. The consideration provided by the Purchaser to the Debtors for the Acquired Assets (i) is fair and reasonable, (ii) is the highest or best offer for the Acquired Assets, (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory or possession.

H. The Debtors: (1) have full corporate power and authority to execute the Purchase Agreement and all other documents contemplated thereby, and the sale of the Acquired Assets by the Debtors have been duly and validly authorized by all necessary corporate action of the Debtors; (2) have all of the corporate power and authority necessary to consummate the transactions contemplated by the Purchase Agreement; and (3) have taken all corporate action necessary to authorize and approve the Purchase Agreement and the consummation by the Debtors of the transactions. No consents or approvals are required for the Debtors to consummate the transactions other than the approval of this Court and those set forth in the Purchase Agreement. Neither the execution of the Purchase Agreement nor the consummation of the transactions in accordance with its terms will constitute a violation of any provision of the Debtors' organizational documents or any other contract, instrument, law, regulation or ordinance by which the Debtors are bound.

I. Debtors are the legal and equitable owners of the Acquired Assets and, upon entry of this Sale Order, they shall have full authority to consummate the transactions contemplated by the Purchase Agreement. The Purchase Agreement and the transactions have

been duly and validly authorized by all necessary corporate action, as the case may be, of Debtors.

    J.  The Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

    K.  The transfer of the Acquired Assets to the Purchaser shall be a legal, valid and effective transfer of the Acquired Assets and shall vest the Purchaser at Closing with all right, title and interest of the Debtors in and to the Acquired Assets, free and clear of all claims (as defined in Section 101(5) of the Bankruptcy Code, "Claims"), liens (as defined in Section 101(37) of the Bankruptcy Code, "Liens"), encumbrances and all other interests (collectively including each of the foregoing, "Interests"), including, but not limited to: (1) those that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal or termination of the Debtors' interest in the Acquired Assets, or any similar rights; (2) those relating to taxes arising under or out of in connection with, or in any way relating to the operation of the Acquired Assets prior to the Closing; and (3) (a) those arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, rights of setoff or recoupment, encumbrances, rights of first refusal or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, and (b) all debts arising in any way in connection with any agreements, acts or failures to act of any of the Debtors or any of the Debtors' predecessors or affiliates, Claims, obligations, liabilities, rights of set off or recoupment, demands, guarantees, options, rights, contractual or other commitments, restrictions, interests and matters of any kind and nature, whether known or

4

YCST01:10834962.1                                                   070040.1001

unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of these bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise, including, but not limited to, Claims otherwise arising under doctrines of successor liability to the greatest extent permitted by applicable law.

L. The Debtors may sell the Acquired Assets free and clear of all Interests of any kind or nature whatsoever as contemplated by the Purchase Agreement because, in each case, one or more of the standards set forth in sections 363(f)(1) through 363(f)(5) of the Bankruptcy Code have been satisfied. Those holders of Interests that did not object, or who withdrew their objections to the Motion or the Sale, are deemed to have consented pursuant to sections 363(f)(2) and 365(c)(1) of the Bankruptcy Code. Those holders of Interests that did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Interests, if any, attach to the net cash proceeds of the transactions ultimately attributable to the Acquired Assets against or in which they assert an Interest.

M. The Purchaser shall have no liability for any liability, Claim or other obligation of or against the Debtors related to the Acquired Assets by reason of the transfer to the Purchaser of the Acquired Assets. The Purchaser shall not be deemed, as a result of any action taken in connection with the purchase of the Acquired Assets, to: (1) be a successor to the Debtors; or (2) have, *de facto* or otherwise, merged with or into the Debtors. The Purchaser is not acquiring or assuming any liability, warranty or other obligation of the Debtors, except as expressly set forth in the Purchase Agreement.

N. The Purchase Agreement is a valid and binding contract between the Debtors and the Purchaser, which is and shall be enforceable according to its terms, and with the same force and effect as this Sale Order.

O. All of the provisions of the Purchase Agreement are nonseverable and mutually dependent.

P. The Debtors have articulated good and sound business reasons for waiving the stay otherwise imposed by Bankruptcy Rules 6004(h) and 7062.

Q. The Debtors' privacy policy does not prohibit the Sale and the Sale is consistent with the Debtors' privacy policy.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. The Motion is granted in its entirety.

2. All objections to the Motion or relief provided herein that have not been withdrawn, waived or settled, are hereby overruled and denied on the merits.

3. Pursuant to sections 105 and 363 of the Bankruptcy Code and the Purchase Agreement annexed hereto as <u>Exhibit I</u>, the Debtors are hereby authorized to sell, transfer and convey the Acquired Assets to the Purchaser on the terms set forth in the Purchase Agreement.

4. Except as otherwise set forth in the Purchase Agreement, the Acquired Assets are to be sold to the Purchaser "as is-where is," without any representations or warranties from the Debtors as to the quality or fitness of such assets for either their intended or any other purposes.

5. The transfer of the Acquired Assets to the Purchaser pursuant to the Purchase Agreement constitutes a legal, valid and effective transfer of the Acquired Assets, and

6
YCST01:10834962.1                                                                                    070040.1001

shall vest the Purchaser with all right, title and interest of the Debtors in and to the Acquired Assets, free and clear of all Interests of any kind or nature.

6. Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Acquired Assets shall be transferred to Purchaser, and upon the Closing shall be, free and clear of all Interests of any kind or nature whatsoever (including, but not limited to, those described in Recital K of this Order), and all such Interests of any kind or nature whatsoever shall attach to the net cash proceeds of the transactions in the order of their priority, with the same validity, force and effect that they now have as against the Acquired Assets, subject to any claims and defenses the Debtors may possess with respect thereto.

7. Pursuant to paragraph 3.3 of the *Order (A) Authorizing Debtors to Use Cash Collateral, (B) Granting Adequate Protection in Respect Thereof and (C) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001* [Dkt No. 43] and any analogous provision of any final order thereon (collectively, the "Cash Collateral Order"), the proceeds of the Sale, less any amounts paid pursuant to paragraphs 22 and 23 below, shall be paid directly to the Term Loan Agents (as defined in the Cash Collateral Order), to be held, disbursed and applied pursuant to the terms of the Cash Collateral Order.

8. Except as expressly permitted otherwise by this Sale Order, all persons and entities, including, but not limited to, all debt security holders; equity security holders; governmental, tax and regulatory authorities; lenders; trade creditors; and other creditors holding Interests of any kind or nature whatsoever against or in the Debtors or the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with or in any way relating to the Debtors, the Acquired Assets, the operation of the Acquired Assets prior to the

Closing or the transactions are forever barred, estopped and permanently enjoined from asserting against the Purchaser, its successors or assigns, their property or the Acquired Assets such persons' or entities' Interests (including without limitation, any right of set-off or recoupment).

9. Notwithstanding the foregoing, upon the Closing, each of the Debtors' creditors and any other holder of an Interest is authorized and directed forthwith to execute such documents and take all other actions as may be necessary to release its Interests in the Acquired Assets, if any, as such Interests may have been recorded or may otherwise exist. The failure of any party to execute such documents shall in no may impair or affect the terms of this Order which provide for the transfer of the Acquired Assets free and clear of all Interests.

10. If any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens or other documents or agreements evidencing Interests in the Debtors or the Acquired Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction or releases of all Interests that the person or entity has with respect to the Debtors or the Acquired Assets or otherwise, then the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Debtors or the Acquired Assets. To the extent neither the persons or entities holding the Interests nor the Debtors do so, the Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Sale Order, which shall constitute conclusive evidence of the release of all Interests in the Debtors or the Acquired Assets of any kind or nature whatsoever.

11. This Sale Order: (a) shall be effective as a determination that all Interests of any kind or nature whatsoever existing as to the Acquired Assets prior to the Closing have

been unconditionally released, discharged and terminated as set forth herein, and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office or contract to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Acquired Assets.

12. The Purchaser shall have no successor or other liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Acquired Assets. Without limiting the generality of the foregoing, the Purchaser shall not be liable for any Claims against the Debtors or any of their predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, *de facto* merger or substantial continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing, including, but not limited to, liabilities on account of any Taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Acquired Assets prior to the Closing. The Purchaser has given substantial consideration under the Purchase Agreement for the benefit of holders of Interests. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential Claims of successor liability against the Purchaser, which releases shall

9

be deemed to have been given in favor of the Purchaser by all holders of Interests against the Debtors or the Acquired Assets.

13. The sale, transfer, assignment and delivery of the Acquired Assets shall not be subject to any Interests, and Interests of any kind or nature whatsoever shall remain with, and continue to be obligations of, the Debtors and their estates. All persons holding Interests against or in the Debtors or the Acquired Assets of any kind or nature whatsoever (including, but not limited to, the Debtors and/or their respective successors, including any trustees thereof, creditors, employees, unions, former employees and shareholders, administrative agencies, governmental units, secretaries of state and federal, state and local officials maintaining any authority relating to any environmental, health and safety laws, and their respective successors or assigns) hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing such Interests of any kind or nature whatsoever against the Purchaser, its property or its successors and assigns or the Acquired Assets, as an alleged successor or otherwise, with respect to any Interest of any kind or nature whatsoever such person or entity had, has or may have against or in the Debtors, their estates, their respective officers, directors or shareholders or the Acquired Assets. Following the Closing, no holder of an Interest in or against the Debtors or the Acquired Assets shall interfere with Purchaser's title to or use and enjoyment of the Acquired Assets based on or related to such Interest, or any actions that the Debtors have or may take in these Chapter 11 cases.

14. The transactions are undertaken by Purchaser without collusion and in good faith, in accordance with Bankruptcy Code sections 363(m) and 363(n). Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the transactions under the Purchase Agreement shall not affect the validity of the sale of the

Acquired Assets to Purchaser, unless such authorization is duly stayed pending such appeal. Purchaser is a good-faith purchaser of the Acquired Assets and is entitled to all of the benefits and protections afforded by Bankruptcy Code section 363(m) and other applicable law.

15. This Court retains jurisdiction to:

(a) Interpret, implement and enforce the terms and provisions of this Sale Order and the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects, with the Purchase Agreement and each of the other foregoing agreements to be enforced with the weight of this Sale Order, and resolve any disputes thereunder, except as otherwise provided therein;

(b) Protect Purchaser and the Acquired Assets against any Interests, including, without limitation, to enjoin the commencement or continuation of any action seeking to impose on the Purchaser successor liability;

(c) Enter orders in aid or furtherance of the transactions contemplated by the Purchase Agreement;

(d) Compel delivery of all Acquired Assets to the Purchaser;

(e) Adjudicate all issues relating to any Liens or Interests in the Acquired Assets; and

(f) Adjudicate any and all issues relating to the Acquired Assets, the proceeds of the transactions, the Sale Motion, and the Purchase Agreement.

16. The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors or their estates.

17. The failure specifically to include any particular provisions of the Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such

provisions, it being the intent of the Court that the Purchase Agreement is hereby authorized and approved in its entirety, as it may be amended or supplemented in accordance with its terms and this Sale Order.

18. To the extent of any conflict between the Purchase Agreement and this Sale Order as they relate to the rights and obligations of the Debtors and the Purchaser with respect to each other, the Purchase Agreement shall govern. To the extent of any conflict between the Purchase Agreement and this Sale Order not within the scope of the immediately preceding sentence, including, without limitation, as they relate to the rights and obligations of third parties and the rights and obligations of the Purchaser with respect to third parties, this Sale Order shall govern.

19. This Sale Order and the Purchase Agreement: (a) shall be binding in all respects upon all creditors of and holders of equity interests in any Debtors (whether known or unknown), any holders of Interests, the Purchaser and all successors and assigns of the Purchaser, the Debtors and their affiliates, the Acquired Assets and any subsequent trustees appointed in these chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code; and (b) shall not be subject to rejection. Nothing contained in any chapter 11 plan of reorganization or liquidation filed or confirmed in this bankruptcy case or in any related confirmation order, disclosure statement, or order approving disclosure statement shall conflict with or derogate from the provisions of this Sale Order and the Purchase Agreement.

20. Any amounts that become payable by the Debtors to the Purchaser pursuant to the Purchase Agreement or this Sale Order: (a) shall constitute super-priority administrative expenses of the Debtors' estates under sections 503(b)(1), 507(a)(1) and 507(b) of

the Bankruptcy Code and (b) shall be paid by the Debtors in the time and manner provided for in the Purchase Agreement and this Sale Order.

21. All entities that are in possession of some or all of the Acquired Assets upon the Closing Date hereby are directed to surrender possession of the Acquired Assets to the Purchaser on the Closing Date.

22. In accordance with the terms of the Retention Letter with Streambank, LLC ("Streambank") and this Court's *Order Authorizing the Debtors and Debtors in Possess to Retain Streambank, LLC as Intellectual Property Disposition Consultant Nunc Pro Tunc to January 31, 2011* [Dkt. No. 215], the Debtors are authorized to pay to Streambank (i) a commission in the amount of $102,500 from the proceeds of the Sale of the Acquired Assets, and (ii) reimbursement of Streambank's reasonable out of pocket expenses, in the aggregate amount of $4,479.37, all as set forth in the *Declaration of David Peress Providing Report with Respect to Auction of Debtors' Intellectual Property and Statement of Fees and Expenses of Streambank, LLC.*

23. The Debtors are further authorized to compensate Metropolitan Real Estate Investors, LLC as the Stalking Horse for its reasonable, actual and necessary out of pocket expenses incurred in connection with the Stalking Horse Purchase Agreement in the amount of $20,000 from the proceeds of the Sale of the Acquired Assets.

24. The 14-day stay otherwise imposed by Bankruptcy Rules 6004(h) and 7062 is hereby waived, and this Sale Order shall be effective immediately upon entry.

Dated: Wilmington, Delaware
March 7, 2011

_____
Peter J. Walsh
United States Bankruptcy Judge

13
YCST01:10834962.1                                                                                                070040.1001